IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 7, 2006

**STATE OF TENNESSEE v. ARTIS REESE**

**Appeal from the Criminal Court for Shelby County**
**No. 03-07242-43    Chris Craft, Judge**

---

**No. W2006-00378-CCA-R3-CD  - Filed February 21, 2007**

---

The appellant, Artis Reese, was indicted on four counts of aggravated robbery, one count of possession of marijuana, and one count of aggravated criminal trespass. After a jury trial, the appellant was convicted of four counts of aggravated robbery and one count of aggravated criminal trespass. Following a sentencing hearing, the trial court merged two of the aggravated robbery convictions into the other two aggravated robbery convictions and imposed consecutive eight-year sentences on the resulting two convictions for aggravated robbery. The trial court sentenced the appellant to a concurrent sentence of six months for aggravated criminal trespass, resulting in an effective sentence of sixteen years. After the denial of a motion for new trial, this appeal followed in which the appellant challenges the sufficiency of the evidence. Because the evidence was sufficient to support the convictions, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Garland Erguden, Assistant Public Defender, Memphis, Tennessee for the appellant, Artis Reese.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; William L. Gibbons, District Attorney General; and Nicole Duffin, Assistant District Attorney General,for the appellee, State of Tennessee.

**OPINION**

In October of 2003, the appellant was indicted by the Shelby County Grand Jury on four counts of aggravated robbery, one count of possession of marijuana, and one count of aggravated criminal trespass. Prior to trial, the State dismissed the charge of possession of marijuana.

At trial, Gladys Malone testified that on June 16, 2003, she was driving her husband's 1995 Oldsmobile. Ms. Malone had two passengers in her car including her two-year-old daughter Antoinese Malone and her friend Stacy James. At a traffic light, a Buick Roadmaster pulled up behind her car. In the rearview mirror, Ms. Malone saw a man exit the Buick and come toward her window. The man had a gun and instructed Ms. Malone to get out of her car. Ms. Malone described the gun as black and appeared to be "a real old Smith and Wesson twenty-two or twenty-five, a little old gun." The man held the gun at his hip, pointed the gun toward Ms. Malone, and told her to get out of the car. Ms. Malone opened the door and got out of the car. By this time, Ms. James was already standing on the curb of the road. The man said, "Bitch, you better go on," and cocked his gun. Ms. Malone had to hurry to get her daughter and car seat out of the back seat of the car, eventually pulling the entire car seat, in which her child was sitting, out of the car as the man was starting to drive away. The man sped off in the car. Ms. Malone testified that she did not see the man who approached the other side of the vehicle and that she could not make a positive identification of him. However, she tentatively identified the appellant as one of the perpetrators.

Stacy James testified that on the morning of June 16, 2003, she was riding in the passenger seat of Gladys Malone's car. According to Ms. James, when the car stopped at a traffic light, three "guys" in a Buick Roadmaster on their right side were "trying to flag [them] down" by waiving their arms. At the stoplight, the male driver and one of the male passengers got out of the car, approached Ms. Malone's car, and demanded that she and Ms. James exit the vehicle. One of the men went to the passenger side of the car and "pulled [a] gun just out enough where [she] could see it." The other man said, "Get out of the car, Bitch." Once she saw the gun, Ms. James became scared, grabbed her purse and cell phone, and got out of the car. She left her telephone charger in the car. The driver of the Buick then got into Ms. Malone's car and drove away while the appellant got back into the Buick, which the third man drove away from the scene.

Ms. James was able to identify the appellant in a photographic lineup as the man who stood on her side of the vehicle and displayed a gun. She also identified the appellant at trial as the perpetrator.

Sergeant Dale Hensley of the Memphis Police Department received information that the person who stole Ms. Malone's car was driving a Buick Roadmaster. He later learned that the Buick belonged to a person who lived in Arkansas. The Buick was found in Shelby County. The appellant and Tony Clayborn were later developed as suspects in the robbery. Sergeant Hensley put together photographic lineups and presented them to both Ms. James and Ms. Malone. Although Ms. Malone pointed to the picture of the appellant, she was not able to identify him with one hundred percent certainty. Ms. James, on the other hand, identified the appellant immediately.

Officer Ray Jenkins of the Memphis Police Department responded to a report of two suspects in a carjacking that were sitting on a porch with a Buick Roadmaster parked nearby. Upon arriving at the address, he saw several African American men sitting on the porch. One of the men fled. Officer Jenkins questioned and arrested the remaining man, Tony Clayborn. When Officer Jenkins looked inside the Buick, he saw a handgun under the armrest.

-2-

Tony Clayborn testified at trial that he was acquainted with the appellant. Mr. Clayborn stated that the appellant drove a Buick Roadmaster, and that he and the appellant were both present when approached by Officer Jenkins. Mr. Clayborn stated that the appellant "took off running" when Officer Jenkins approached. Mr. Clayborn also testified that he had no knowledge of a robbery and claimed that he had never seen the appellant with a gun. On cross-examination, Mr. Clayborn admitted that he was a convicted felon and drug dealer with a pending drug charge.

Jenny Franklin testified that on June 27, 2003, she saw a police officer with dogs outside her apartment. Sometime later, as she was lying on her couch, the appellant kicked her door in and asked if he could "take a bath." Ms. Franklin gave the appellant permission to take a bath in hopes that she could get out of the apartment while he was in the bathroom. Ms. Franklin stated that as the appellant began to undress and enter the bathroom, she fled the apartment. Ms. Franklin was later able to identify the appellant from a photographic lineup.

Officer Keith Rogers of the Memphis Police Department arrested the appellant on June 27, 2003. Officer Rogers saw the appellant in the apartment complex where Ms. Franklin lived. The appellant ran into a corridor. Shortly thereafter, Officer Rogers heard "a loud thump like he had kicked a door in or something like that." Ms. Franklin ran out of her apartment and advised officers that the appellant was inside. The appellant then ran out of Ms. Franklin's apartment. He was completely nude at the time. The officers chased the appellant and he was soon apprehended and arrested.

Analysis

The appellant complains on appeal that the evidence is insufficient to support his convictions for aggravated robbery. Specifically, the appellant argues that there was insufficient evidence presented at trial to establish his identity as the man who committed the aggravated robbery at issue. The State disagrees.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-

weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

The appellant was convicted of two counts of aggravated robbery. Pursuant to Tennessee Code Annotated section 39-13-401, robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Aggravated robbery is robbery that is "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402.

At the outset, we acknowledge that it is well-settled that the identification of a defendant as the perpetrator of the crime is a question of fact for the jury to determine. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Keeping that in mind and looking at the evidence in a light most favorable to the State, the proof at trial established that two men, armed with handguns, forced Ms. Malone, her daughter, and Ms. James to exit Ms. Malone's vehicle. One of the men drove away in the car. Ms. James was able to grab all of her belongings, except her cell phone charger, before she exited the vehicle.

Ms. James testified that the appellant was the man who stood on her side of the car and showed her his gun. She identified the appellant both from a photographic lineup and at trial. Further, Tony Clayborn testified that the appellant drove a Buick Roadmaster, the type of car that the perpetrators were driving. Finally, when Officer Jenkins approached the appellant and Tony Clayborn to question them about the robberies, the two men were in close proximity to a Buick Roadmaster. The appellant fled when approached by Officer Jenkins. Inside the Buick, the police found a handgun.

All of the evidence at trial support's the jury's conclusion that the appellant was one of the perpetrators of the robbery. This issue is without merit.

### Conclusion

For the foregoing reasons, the judgments of the trial court are affirmed.

 

 

_____
JERRY L. SMITH, JUDGE